Ramona OAKLAND, et al., Appellants,

v.

Grace STENLUND, defendant and third party plaintiff, Respondent,

v.

Charles BROKER, et al., Third Party Defendants.

No. C2-87-2260.

Court of Appeals of Minnesota.

March 8, 1988.
Review Denied April 20, 1988.

Thomas D'Albani, Cann, Schmidt, Haskell & D'Albani, Bemidji, for appellants.

David G. Schueppert, Powell, Lang & Schueppert, Bemidji, for respondent.

Heard, considered and decided by HUSPENI, P.J., and SCHUMACHER and FLEMING *, JJ.

## OPINION

HUSPENI, Judge.

Appellant, Ramona Oakland, was injured after a fall down the basement stairs at her daughter's home, leased from Grace Sten-

lund, respondent. Appellant requests reversal of the summary judgment denying recovery against respondent for appellant's injuries. We affirm.

## FACTS

Charles and Wendy Broker rented a house in Bemidji from respondent and were tenants in the property from March to November of 1985. On September 7, 1985, Wendy Broker asked appellant, her mother, to visit the Bemidji home to care for the Broker children. In an attempt to find the bathroom, appellant opened the door to the basement, fell downstairs and was injured. Appellant and the Brokers dispute whether this was appellant's first visit to the home.

In 1987, appellant initiated an action for damages claiming that her fall was caused by respondent's negligence as landlord of the premises. Respondent denied the allegations and brought a third party action against the Brokers. Both appellant and respondent sought summary judgment in their favor.

The trial court had before it depositions taken from the Brokers, from appellant and her husband, and from the respondent and her husband. In addition, appellant presented the affidavit and professional opinion of Roger Keiser, an architect.

In her deposition, appellant stated that in her attempt to find the bathroom, she opened the basement door which was not latched, stepped into the unlighted area and fell down the stairs leading to the basement. Appellant said she stepped through the opened door without feeling along the wall for the light switch.

Charles and Wendy Broker's depositions indicated that there was no written lease for the house and that respondent did not take them into the basement prior to renting the house to them. They both gave an opinion that the stairs were not unsafe and that no warning to visitors was necessary. Neither of the Brokers made complaints to respondent regarding the condition of the basement stairs.

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

Respondent's deposition indicated that she purchased the Bemidji house in 1974 and that no repairs or modifications to the basement stairs had been conducted during the intervening period. She stated that there had been no complaints from either the Brokers or any other tenant concerning the condition of the basement stairs. In addition, respondent maintained that every prospective tenant was taken through the whole house and that the Brokers had been shown the basement stairs and told to "watch out for going downstairs."

Roger Keiser inspected the property and prepared a report on the condition of the basement stairs. He said that "in the 20 years that I have been practicing architecture, this stairway was the worst that I have seen since it seriously violates every recognized design standard for each and every one of its component parts by a very wide margin." In his opinion, respondent could have reduced the hazard by making relatively inexpensive modifications to the stairway.

The trial court determined the basement stairs constituted a hazard and that:

> [T]he Brokers were aware of the hazardous condition of the stairway either from personal observation or by information given by [respondent] at the time the premises were leased.
>
> It is also * * * clear that Ramona Oakland had no notice of the defective condition of this stairway, lighting thereof and lack of handrail, prior to her injury.

On May 21, 1987, the trial court granted summary judgment in favor of respondent, and determined that:

> [Respondent] had assumed no obligation to repair the stairs nor had the tenant requested that the stairs be repaired. As there was not a duty on the part of [respondent] to make the repairs, the failure to do so is not negligent.
>
> Neither Statute 504.18 nor the Bemidji Building Code changes the liability of a landlord as it exists under common law.

The judgment was entered on June 11, 1987 and amended on November 4, 1987.

1. It is uncertain whether respondent showed the basement stairs to the Brokers and warned

## ISSUE

Was respondent liable for appellant's injuries sustained in a fall down the basement stairs of a house leased by respondent to appellant's daughter?

## ANALYSIS

Upon review of a summary judgment, this court must determine whether there was any genuine issue of material fact before the trial court and whether the law was properly applied. *Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (Minn.1979). The material facts in this case are undisputed.[1] Consequently, this court must determine whether the granting of a summary judgment in favor of respondent was proper as a matter of law.

The trial court determined that respondent, as landlord of the Bemidji home, owed no duty to appellant as the tenant's guest and that respondent was, therefore, not liable in negligence for appellant's injuries. The question of negligence is normally a matter for the jury, *DeWitt v. Schuhbauer,* 287 Minn. 279, 282, 177 N.W.2d 790, 793 (1970); however, the existence of a legal duty is an issue for the trial court to determine as a matter of law. *Larson v. Larson,* 373 N.W.2d 287, 289 (Minn.1985).

In order for appellant to recover damages from respondent, she must show that respondent owed her a duty of care, that respondent breached that duty, and that appellant's injuries proximately resulted therefrom. *Hill v. Gaertner,* 253 Minn. 457, 458–59, 92 N.W.2d 810, 812 (1958). Appellant visited the Broker house in Bemidji at Wendy Broker's request. As landlord, respondent owed to appellant the same duties she owed to the Brokers as tenants; and as their guest, appellant has no greater right than the Brokers would have had. *Johnson v. O'Brien,* 258 Minn. 502, 505 n. 1, 105 N.W.2d 244, 246 n. 1 (1960). Therefore, we must inquire into what duties respondent owed to the Brokers.

them to be careful when using them. However, this disputed fact is not material in this case.

■ At common law, a landlord was not liable to a tenant for any damage caused by defective conditions existing at the time the premises were leased. Today, however, there are several recognized exceptions to this general rule: (1) where there is a hidden dangerous condition on the premises of which the landlord is aware, but the tenant is not; (2) where the land is leased for purposes involving admission to the public; (3) where the premises are still in control of the landlord; and (4) where the landlord negligently repairs the premises. *Broughton v. Maes,* 378 N.W.2d 134, 135 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Feb. 14, 1986). Appellant argues that the first exception applies here.

There was no written agreement here that respondent was responsible for repairs. In *Ryberg v. Ebnet,* 218 Minn. 115, 15 N.W.2d 456 (1944), the supreme court stated:

It is a well-known rule, settled in this state and universally accepted, that if there is no agreement by the landlord to repair the demised premises; if he is not guilty of fraud or concealment as to their safe condition; if defects in the premises are obvious and do not constitute a hidden danger, nuisance, or trap; and if there is no showing that at the time the premises were leased they were unfit for their intended purpose, the tenant takes the risk as to the safety of their occupancy, and the landlord is not liable in tort to invitees of the tenant for injuries received upon the premises by reason of such defects.

*Id.* at 117–18, 15 N.W.2d at 457. (Overruled to the extent that a landlord is not relieved from liability on the basis of a lack of actual knowledge of the hidden defect. *Johnson,* 258 Minn. at 507, 105 N.W.2d at 247.)

The *Johnson* court held that:

[W]here a landlord has information which would lead a reasonably prudent owner exercising due care to suspect that danger exists on the leased premises at the time the tenant takes possession, and that the tenant exercising due care would not discover it for himself, then he must at least disclose such information to the tenant. * * *

"To require one to use that care which an ordinarily prudent person would exercise under the same or similar circumstances can hardly be onerous, unreasonable or oppressive." (quoting the trial court memorandum)

*Id.* at 506–07, 105 N.W.2d at 247 (footnote omitted). Although other states have expanded the common-law duty of a landlord even further to require the exercise of reasonable care under the circumstances, the Minnesota Supreme Court has refused to do so. *Broughton,* 378 N.W.2d at 135–36. Therefore, we must test respondent's duty to the Brokers by those standards set forth in *Johnson.*

■ The trial court determined that the basement stairs did constitute a hazard, albeit not a hidden one. Although the architect's report states that the stairs are dangerous, appellant is the only person known to have fallen on them. The basement stairs have remained in the same condition since respondent purchased the home in 1974 and no complaints about the stairs or requests for modification have been received by respondents. The Brokers have used the stairs often without incident and were fully aware of their condition. Both respondent and the Brokers believed the stairs were safe. Clearly respondent breached no duty to the Brokers.

■ Appellant continues to maintain that a warning should have been given to her indicating that the basement stairs were dangerous. We cannot agree. A landlord is required to notify the tenant of hidden dangers. The trial court found no hidden danger here and that finding is supported by the record. Even if we were to assume that the basement stairs did constitute a hidden danger, respondent still would have only a duty to notify the Brokers. She would have no corresponding duty to warn the Brokers' guests. The duty to warn appellant of any danger presented by the basement stairs is placed instead upon the Brokers themselves.

Appellant's reliance on *Bisher v. Homart Development Co.,* 328 N.W.2d 731 (Minn.

1983), is misplaced. There a law suit was brought against the owner of a shopping center who was in possession and control of the premises. Additionally, appellant's reliance upon *Filipczak v. International Brotherhood of Electrical Workers, Local 110,* 292 Minn. 486, 195 N.W.2d 433 (1972), is misplaced. In *Filipczak,* the premises were open to the public, invoking the public use exception to the common law rule. The landlord, however, was not liable for injuries caused through the tenant's negligence to a member of the public.

Finally, the architect's report indicated that the staircase violated the Bemidji building code and other safety standards. Appellant argues that respondent therefore violated Minn.Stat. § 504.18, subd. 1(c) (1984). The trial court concluded that neither the statute nor the building code affected respondent's common-law liability. We agree. Neither Minn.Stat. § 504.18 nor the fire and building codes alter a landlord's liability for defects which were known to both landlord and tenant. *Meyer v. Parkin,* 350 N.W.2d 435, 438 (Minn.Ct. App.1984); *Broughton,* 378 N.W.2d at 137.

## DECISION

As landlord of a rented home, respondent had no duty to warn the tenant's guest that basement stairs were dangerous where both landlord and tenant were aware of any existing hazard. In these circumstances, respondent's duty to warn is unaffected by the provisions of either Minn.Stat. § 504.18 or the fire and building codes.

Affirmed.